UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 22-81367-CIV-CANNON

NELSON FERNANDEZ,

        Plaintiff,

v.

KOKO ATLANTIC LLC,

        Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS COMPLAINT

Defendant Koko Atlantic LLC ("Defendant"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), moves this Court to dismiss the Plaintiff's Complaint seeking declaratory and injunctive relief for failure to state a claim upon which relief can be granted. In support of this motion, Defendant states as follows:

## BACKGROUND

The Americans with Disabilities Act, 42 U.S.C. §§ 12181 – 12189 ("ADA") is supposed to protect people with disabilities from discrimination in all areas of public life. Unfortunately, some law firms and unscrupulous clients find ways to exploit the ADA and target small businesses with excessive ADA lawsuits. These abusive website accessibility shakedown lawsuits prioritize forcing small businesses to settle for millions of dollars, not improving accessibility, as the law intended.

Plaintiff and his attorneys are habitual litigators and serial filers who for many years have brought dozens, perhaps several hundred, disability discrimination actions, including website accessibility lawsuits, against Florida's small business owners, many already struggling with inflation and supply chain and labor shortages. Unfortunately, Defendant is the latest target of an

abusive ADA lawsuit.  The boilerplate[1] complaint alleges that Plaintiff, a visually impaired individual, is unable to access certain portions of Defendant's limited use website, and therefore is not in compliance with the ADA and the Palm Beach County Code of Ordinances, § 15-57 (the "Palm Beach Code").

Defendant operates a retail store selling beach and swimwear apparel under the name "Kokonuts" in Delray Beach, Florida as well as an adjunct website with the name "https://www.kokodelray.com" (the "Website").  Plaintiff claims that the Website violates the ADA and Palm Beach Code as it does not allow him to view all sections of the Website's content.

Plaintiff claims that certain sections of the Website are inaccessible to him as a blind person using screen reader software.  Specifically, Plaintiff alleges that on the Website: (a) home page logo is not properly labeled; (b) store address and telephone number are inaccessible when navigating with a keyboard; (c) text information is not labeled; the cursor skips the information and navigates to the nearest available link, button, or header; (d) size options not properly labeled; and (e) phone number is not properly labeled. *See* Complaint, ¶ 21.

## **PRELIMINARY STATEMENT**

The Complaint fails to state a claim upon which relief can be granted because websites are not places of public accommodation under Title III of the ADA and the Palm Beach Code. *See Gil v. Winn-Dixie Stores, Inc*., 993 F.3d 1266, 1277 (11th Cir.)(reasoning that, "pursuant to the plain language of ADA, Title III, public accommodations are limited to actual, physical places," and websites do not qualify), *vacated on reh'g as moot*, 21 F.4th 775 (11th Cir. 2021) ("*Gil*").  Even if this Court does not follow *Gil* in applying a strict constructionist statutory analysis of the ADA, Plaintiff still failed to establish that the Website operates as an intangible barrier to Defendant's

---

[1] Plaintiff forgot to update his boilerplate complaint, ¶ 11, by citing the Miami-Dade Code instead of the Palm Beach Code. He also requests an award for "*her* reasonable attorney's fees …." *See* Complaint, p. 24.

physical store. While Plaintiff alleges that he "attempted" to utilize the Website to browse merchandise and acquire information about the brick-and-mortar store (*see* Complaint, ¶ 20), critically he never explains that he was unable to (i) visit the store, (ii) make an online purchase, or (iii) acquire pertinent store or merchandise information from the Website. Indeed, the only item that Plaintiff alleges he was unable to access or locate on the Website was an "accessibility" notice (*see* Complaint, ¶ 22) – and that alone is insufficient to state a claim.

## ARGUMENT

The Complaint should be dismissed in its entirety because Plaintiff's allegations fail to plausibly state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Both Counts of the Complaint should be dismissed consistent with the Eleventh Circuit's reasoning in *Gil* and *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279 (11th Cir. 2002) ("*Rendon*").

### A. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A pleading that asserts mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And "on the assumption that all the allegations are true (even if doubtful in fact)," the factual allegations pleaded "must be enough to raise a right to relief above the speculative level." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (brackets in original) (quoting Fed. R. Civ. P. 8(a)(2)). "The Supreme Court has employed a 'two-pronged approach' in applying the foregoing principles: first, a reviewing court should eliminate any allegations in the complaint that are merely legal conclusions; and second, where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Boyd v. Warden, Holman Correctional Facility*, 856 F.3d 853, 864 (11th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679).

**B. Plaintiff cannot show the Website is a place of public accommodation.**

The ADA and Palm Beach Code do not address accessibility requirements for websites. Nor does the ADA and Palm Beach Code address whether websites offered for or by places of public accommodation must be fully accessible to persons covered by the ADA. *See Gomez v. Bang & Olufsen Am., Inc.*, No. 1:16-CV-23801, 2017 WL 1957182, at *4 (S.D. Fla. Feb. 2, 2017). Congress passed the ADA in 1990 and amended it in 2008. "[T]he ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001). Under Title III, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of *any place of public accommodation* by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (emphasis added).

In the 12 subparagraphs in Section 12181(7) of Title III of the ADA, Congress provided an expansive list of physical locations, which are "public accommodations." The list covers most types of physical locations where individuals may find themselves. Notably, the list does not include websites. Only two circuit courts have been presented with the issue of whether a website is a place of public accommodation under Title III of the ADA. In *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir.), *cert. denied*, ––– U.S. –––, 140 S. Ct. 122, 205 L.Ed.2d 41 (2019), the Ninth Circuit expressly avoided the issue of whether a website was itself a public accommodation (*id.* at 905 n.6), and instead embraced a "nexus" standard; holding that the ADA applied to Domino's website and smartphone app only because they "connected customers to the goods and services of *Domino's physical restaurants*." *Id.* at 905. In contrast, in *Gil*, the Eleventh Circuit directly addressed the issue and held that the statutory language defining "public accommodations" was unambiguous and clear - it describes 12 types of locations, all of which were tangible, physical places. No intangible places or spaces, such as websites, are listed. The *Gil* court thus concluded that "pursuant to the plain language of Title III of the ADA, public accommodations are limited to actual, physical places," and websites did not qualify. *Id*. at 1277.[2] Thus, as a matter of law Plaintiff cannot state a claim for relief on the grounds that the Website has a nexus to Defendant's physical store and therefore must comply with all ADA and the Palm Beach Code requirements.

---

[2] *Gil* certainly holds more authoritative weight than a Ninth Circuit decision which was decided pre-*Gil*. Further, *Robles* is distinguishable because *Gil* expressly rejected *Robles*' application in favor of following its own precedent in *Rendon*. *Id.* at 1283-84("In sum, we do not find *Robles* persuasive, either factually or legally. Instead, we apply the statute, 42 U.S.C. §§ 12182(a) and (b)(2)(A)(iii), and our precedent, *see Rendon*, 294 F.3d at 1283, to the facts before us."). Thus, *Robles* should not guide this Court's analysis.

**C. Plaintiff failed to state a claim upon which relief can be granted by failing to show how the Website restricted his access to Defendant's physical location.**

District courts in this Circuit are split on the applicability of *Gil* and *Rendon* to ADA claims based on website accessibility. Undoubtedly, Plaintiff will cite to *Fernandez v. Mattress Xperts Broward, Inc.,* No. 21-80573-CIV, 2021 WL 3931243 (S.D. Fla. Sept. 2, 2021) and *Fernandez v. Bruno Northfleet, Inc.*, No. 21-80609-CIV, 2021 WL 48513787 (S.D. Fla. Oct. 18, 2021)[3] for application of the Ninth Circuit's "nexus" standard, which was rejected by *Gil*. The better reasoned approach was reached by the courts in *Mahlberg v. Pinch-A-Penny Inc.*, No. 6:21-CV-143-GAP-DCI, 2021 WL 2942675, *4 (M.D. Fla. Apr. 20, 2021) (concluding that not being able to access information about store locations and services does not provide an intangible barrier under *Rendon*) and *Poschmann v. Tradewinds of Sanibel, LLC*, No. 2:21-CV-303-JES-MRM, 2021 WL 3190557 (M.D. Fla. July 28, 2021). The divergence in case law indicates there is no uniform approach to determining the plausibility of Plaintiff's claims. The success of Plaintiff's website accessibility claim requires an analysis of his specific allegations and whether they show that Defendant's Website is an intangible barrier under *Rendon*.

Considering the split in our district courts, this Court should be guided primarily by the Eleventh Circuit's decision in *Gil*, as this case would be binding precedent if it had not been vacated on procedural mootness grounds. Indeed, the Eleventh Circuit has applied the reasoning of vacated opinions to subsequent cases if the opinion was vacated on different grounds. *See, e.g., U.S. v. Mejia-Duarte*, 780 F.App'x 730, 737 (11th Cir. 2019) ("Because the opinion was vacated on grounds apart from legal questions before us today … we see no reason not to apply [the vacated

---

[3] In support of its liberal expansive interpretation of website accessibility under the ADA, Plaintiff may also cite to *Haynes v. Dunkin Donuts LLC*, 741 F. App'x 752 (11th Cir. 2018) (unpublished case) and *Gomez v. General Nutrition Corp.*, 323 F. Supp. 3d 1368 (S.D. Fla. 2018). Both cases are readily distinguishable as they were decided before *Gil*, and *Haynes*' reasoning was rejected by *Gil*.

decision]"); *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1578 n.7 (11th Cir. 1994) (affording persuasive value to an opinion that "was vacated on unrelated grounds").

In *Gil*'s application of *Rendon*, the Eleventh Circuit stated the following:

> Because the phone system in *Rendon* provided the sole access point for individuals to compete for the privilege of being a contestant on a game show and that same phone system was inaccessible by individuals with certain disabilities, it necessarily acts as an "intangible barrier" that prevented plaintiffs from 'accessing a privilege' of a physical space of public accommodation (the game show).

*Gil*, 993 F.3d at 1270 (emphasis added). The Eleventh Circuit then applied *Rendon* to the facts at issue in *Gil*, noting that defendant's limited use website that required all purchases to be made in store did not meet the definition of an intangible barrier. *Id*. at 1290.

*Gil* established that the facts at issue in *Rendon* (sole access point) are an intangible barrier. On the other hand, the facts at issue in *Gil* (limited use website) are not an intangible barrier. What falls in between remains an open issue in this Circuit. However, applying *Gil*, *Rendon*, and their progeny to the facts alleged in the Complaint, Plaintiff has failed to allege sufficient facts to establish the Website is an intangible barrier and the Complaint should be dismissed.

To deny this Motion to Dismiss, the Court will have to adopt a broad reading of the *Gil* holding and rule that a complaint merely alleging an inaccessible website with an ecommerce component acting as a point of sale is alone sufficient to allege an ADA claim. At most, case law interpreting the ADA requires that websites offered by places of public accommodation must not impede a disabled person's use and enjoyment of the place of public accommodation. While Plaintiff alleges that the Website limits his online access to merchandise that is also offered in the physical store and is inconvenient to him, the Complaint fails to plausibly allege how the Website prevents Plaintiff's use and enjoyment of the goods and service offered *at Defendant's physical location*.

The Eleventh Circuit has ruled that websites are not public accommodations under Title III of the ADA. *Gil*, 993 F.3d at 1275.  In *Gil*, the plaintiff challenged the accessibility of Winn Dixie's limited use website, which offered customers the ability to refill prescriptions for in-store pickup, and to link digital coupons to Winn Dixie's rewards card for discounts. *Id*. at 1270.  The website did not allow for purchases of prescriptions on the website itself – all purchases had to be made in the store.  Prior to using the website at issue, plaintiff visited the physical Winn Dixie store to refill his prescriptions. *Id*.  When he learned that Winn Dixie had a website, the plaintiff preferred to use the website to refill his prescriptions instead of visiting the store and explaining what he needed to the pharmacist. *Id*. at 1272.  After being unable to use the website in the way he wanted to, the plaintiff stopped going to Winn Dixie stores not because of the change in the physical access available to him but because of his frustration with the functionality of the website. *Id*.  After a bench trial finding in favor of plaintiff, Winn Dixie appealed to the Eleventh Circuit. *Id* at 1272-73.

The Eleventh Circuit held that websites are not public accommodations for purposes of the ADA and thus a disabled person's inability to access and communicate with a website itself is not a violation of Title III. *Id*.  The Court also held that Winn Dixie's website did not provide an intangible barrier because despite the inconveniences of the website, nothing prevented the plaintiff from refilling his prescriptions at a physical Winn Dixie store. *Id*. at 1279-80.  *Gil* was subsequently vacated on hearing as moot because of a <u>procedural</u> issue: the injunction upon which the litigation was based expired and the Eleventh Circuit lacked the jurisdiction to decide the appeal. *See Gil v. Winn-Dixie Stores, Inc*., 21 F.4th 775, 776 (11th Cir. 2021).  Significantly, the opinion was not vacated because of any change in law that would invalidate the reasoning underlying the Court's conclusions therein.  Thus, this Court should adopt the *Gil* reasoning as persuasive authority in deciding the case issues, as it forecasts how the Eleventh Circuit would

8

evaluate Plaintiff's disability claims. *See Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009) ("We are free to give statements in a vacated opinion persuasive value if we think they deserve it."); *Mejia-Duarte*, 780 F.App'x at 737 (11th Cir. 2019) (giving a vacated opinion persuasive effect when it was vacated on a wholly separate issue). Yet even beyond *Gil*, the Eleventh Circuit's decision in *Rendon* supports dismissal of Plaintiff's disability claims because Plaintiff has failed to plead sufficient facts to demonstrate that Defendant's Website is an intangible barrier to Plaintiff's use and enjoyment of Defendant's physical store, as is required by *Rendon* to bring a claim based on a violation of Title III of the ADA.

          1.      **The Eleventh Circuit's Reasoning in *Gil* Warrants Dismissal of Plaintiff's Claims**

Based on the ADA's text and other Eleventh Circuit precedent, *Gil* established a clear two-step analysis to decide whether a website's alleged inaccessibility violates Title III of the ADA: (1) whether the website is a place of public accommodation in and of itself, such that its inaccessibility violates Title III; and (2) if the website is not a public accommodation, whether it otherwise violates Title III as an "intangible barrier" under *Rendon*. *Gil*, 993 F.3d at 1274-78. *Gil* concluded that websites are not public accommodations under Title III of the ADA based on a plain reading of Title III's text. Title III defines "public accommodation" by providing "an expansive list of physical locations." *Id.* at 1276. As noted by the court, this list "does not include websites." *Id.* Rather, all twelve types of locations are "tangible, physical places. No intangible places or spaces, such as websites, are listed." *Id.* at 1277. Accordingly, the plain and unambiguous language of Title III of the ADA limits public accommodations to "actual, physical places" and does not include websites. *Id.* As such, a plaintiff's inability to access and communicate with a website itself is not a violation of Title III. *Id.* Thus, Plaintiff cannot support his ADA claim based on the alleged inaccessibility of the Website itself as a public accommodation under Title III.

The Eleventh Circuit's conclusion that Title III's definition of "public accommodation" does not include websites is based on a straightforward analysis of the plain statutory language of the ADA. The ADA is clear on its face that "public accommodations" are limited to tangible, physical locations. *See* 42 U.S.C. § 12181(7). If the legislature wishes to broaden the scope of Title III, it may do so. But it is not the judiciary's role to broaden the scope of an otherwise unambiguous statute. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." (internal citation omitted)). Thus, *Gil*'*s* persuasive authority interpreting the ADA's plain language directs that Plaintiff cannot base his ADA and Palm Beach Code claims on the alleged inaccessibility of Defendant's Website itself.

### 2. Plaintiff Failed to Allege That Defendant's Website is an "Intangible Barrier" under *Rendon*

Whether Plaintiff can allege an ADA or Palm Beach Code claim at all turns on whether, under *Rendon*, the allegedly inaccessible Website serves as an "intangible barrier" to his full and equal enjoyment of the goods, services, and privileges offered at Defendant's physical store. *Rendon*, 294 F.3d at 1283. *Rendon* did not involve the alleged inaccessibility of a website, but rather an automated hotline used by the gameshow "Who Wants To Be A Millionaire." *Gil* is an instructive analysis of *Rendon's* application to a website. Under both *Rendon*, generally, and *Gil*, for websites specifically, an "intangible barrier" exists when that barrier operates as a sole access point/point-of-sale to a person's use and enjoyment of the goods, services, and privileges offered at a place of public accommodation. If an individual cannot fully access a website and it is the sole

access point for a good or service, then it acts as a barrier to the place of public accommodation. However, when a website is not a sole access point and only acts to augment the services offered at a place of public accommodation, then *Rendon* and *Gil* instruct that an intangible barrier does not exist and the ADA claim is subject to dismissal.

### 3.  Complaint Does Not Establish that Website Was the Sole Point of Access

The Complaint does not show that the Website is a <u>sole access point</u> as applicable in *Rendon* and reaffirmed by the Eleventh Circuit in *Gil*. *Rendon* is essential to deciding this Motion because it establishes the "intangible barrier" framework, and it is the only published decision of the Eleventh Circuit with full precedential effect on this issue. The "sole access point" language is a direct quote from *Gil*, where the Eleventh Circuit relied upon *Rendon* in reaching its decision. *Gil*, 993 F.3d at 1290. Notably, the "sole access point" language has been repeated in other cases in this district, including *Bruno Northfleet*, 2021 WL 4851378, at *3 (S.D. Fla. Oct. 18, 2021).

In *Rendon*, the automated hotline was the sole point of access for contestant selection and, therefore, enjoying the privileges offered by the defendant's gameshow. *Rendon*, 294 F.3d at 1280-81. The *Rendon* plaintiffs challenged the automated hotline that was used to select contestants for the gameshow. *Id*. at 1280. The hotline was inaccessible to persons who were deaf or had upper-body mobility impairments. *Id*. Thus, the hotline's inaccessibility was a complete barrier to contestant's ability to be considered for the show. *Id*. Therefore, the use of the hotline prevented deaf individuals from the use and enjoyment of the defendant's public accommodation (the game show). *Id*. at 1286.

The Eleventh Circuit in *Gil* and its progeny have clarified that an "intangible barrier violates Title III where it impedes a physical venue's *sole access point* and prevents a plaintiff from accessing a privilege of a physical place of public accommodation." *Mahlberg v. Pinch-A-Penny Inc*., No. 6:21-CV-143, 2021 WL 2942675, at *4 (M.D. Fla. Apr. 20, 2021) (emphasis added).

11

This is precisely how the Court viewed *Rendon* in *Gil*, where the Eleventh Circuit expressly rejected the trial court's reasoning that a website was so "heavily integrated" with a physical store just because certain activities could be done online to assist in the customer's physical store experience. *Gil*, 993 F.3d at 1279.  Under its *Rendon* analysis, the Eleventh Circuit in *Gil* focused on whether the website was a "point of sale" for Winn Dixie's physical stores.  There, the website was not a point of sale – all purchases had to occur in-store. *Id*.  Even services initiated online (like prescription pick-ups) still had to be completed in-store. *Id*.  The court reasoned, therefore, that website inaccessibility did not prevent plaintiff from enjoying the goods, services, and privileges offered at physical Winn Dixie locations. *Id*.  Accordingly, the court held that the website was not an "intangible barrier" to accessibility. *Id*. at 1280.  The plaintiff's ADA claim, therefore, was dismissed. *Id*. at 1284.

In the instant case, Plaintiff does not allege that the Website was the sole access point to the use and enjoyment of Defendant's store or any component therein.  Rather, Plaintiff merely alleges that the Website "acts as a critical point of sale for merchandise available in, from, and through Defendant's physical store." *See* Complaint, ¶ 12.  Plaintiff does not allege that any goods or services offered on the Website are Plaintiff's only access to those goods or services; rather, he alleges that the Website augments the physical store "by providing the public information about the store and by educating the public as to Defendant's available merchandise sold through the Website and in the physical store." *See* Complaint, ¶ 49.  In fact, Plaintiff specifically alleges that the Website allows customers to purchase Defendant's merchandise that is "*also* available for purchase in and from the physical store." *See* Complaint, ¶ 14 (emphasis added).

Far from the facts in *Rendon*, Plaintiff's allegations paint the picture that a customer has multiple access points to use and enjoy the goods, services, and privileges offered by Defendant. Indeed, Plaintiff's Complaint is notable for what it does not allege: it does not allege that any of the

12

goods, services, or privileges offered on the Website are only available on the Website. *Cf. Fernandez v. Bruno Fleet Northfleet, Inc.*, No. 21-80609-CIV, 2021 WL 4851378, at *3 (S.D. Fla. Oct. 18, 2021) (finding plaintiff sufficiently alleged a Title III violation where defendant's website enabled customer to purchase merchandise not available in store). Notably, "nothing prevents [Plaintiff] from shopping at the physical store" and being entitled to all the goods, services, and privileges offered by Defendant there. *Gil*, 993 F.3d at 1279. In contrast to the contestants who were fully deprived of participating in the gameshow in *Rendon* by the hotline's barrier, nothing about the Website bars Plaintiff from accessing the goods and services available in Defendant's physical store.

In *Gil*, the Eleventh Circuit also considered the significance of whether the website at issue was a point of sale. Here, Plaintiff presents a broad interpretation that a website that offers an ecommerce component and acts as a point of sale for merchandise necessarily presents an intangible barrier when a plaintiff's screen reader software is incompatible with the website. But the analysis of whether a plaintiff sufficiently alleges an intangible barrier depends on whether he can effectively communicate with, or access the services offered in, the physical store – not the website itself. As the Eleventh Circuit explained in *Gil*,

> Gil's mere inability to communicate with and access the services available on the website does not mean that Winn-Dixie is necessarily in violation of the [ADA]. Rather, in order for there to be a violation of the [ADA], the inaccessibility of the website must serve an 'intangible barrier' to Gil's ability to communicate with Winn-Dixie's *physical stores*, which results in Gil being excluded, denied services, segregated, or otherwise treated differently from other individuals *in the physical stores*.

*Gil*, 993 F.3d at 1290 (emphasis added). Similarly in the Complaint, Plaintiff focuses on his inability to communicate with the Website itself. For example, the Complaint alleges, "[t]he fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is

unable to participate in the same shopping experience….,[4] (*see* Complaint, ¶ 23), but he does not allege any facts demonstrating his inability to communicate with the physical store.[5]  Plaintiff has not alleged that there are any goods or services available only online that are inaccessible to him in the physical store.  Similarly, Plaintiff alleges that he intends to patronize Defendant's physical store once the Website's access barriers are removed. *See* Complaint, ¶ 24.  If there are other avenues for Plaintiff to access goods and services on the Website that may be available at the physical store, then he has failed to establish an intangible barrier.  Plaintiff has not alleged any component of the Website that bars Plaintiff from accessing something at Defendant's place of public accommodation (its brick-and-mortar store).  Nor has Plaintiff alleged that some products or services are solely accessible online and unavailable in the physical store.  Plaintiff's disability claims, therefore, fail.

### 4. Allegations in the Complaint Do Not Establish that the Website Impedes Access to the Physical Store

Importantly, the "intangible barrier" must be a barrier to the use and enjoyment of Defendant's *physical store*, not a barrier to the use and enjoyment of Defendant's Website.  Title III provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of *any place of public accommodation*." 42 U.S.C. § 12182(a) (emphasis added).  The preposition "of" here connects "full and equal enjoyment" to "public accommodation[.]"  It is this statutory language that the *Rendon* court framed the issue before it as whether the automated hotline

---

[4] Plaintiff is not guaranteed an identical shopping experience as the non-visually disabled public under the ADA. *See Gil*, 993 F.3d 1281 n. 20.

[5] Plaintiff alleges that he intends to visit Defendant's physical store but is unable to do so because he cannot communicate with Defendant due to his severe blindness and the Website's access barriers. *See* Complaint, ¶ 24.  However, the only fact allegations Plaintiff made to support this conclusory allegation relate to the Website itself, not any attempted communication with the physical store.

"screened out disabled persons from participation in a competition held in a tangible public accommodation." *Id*. (emphasis added).

Here, the Complaint's allegations do not establish that Plaintiff cannot fully use and enjoy the goods and services at Defendant's physical location. The Complaint does not allege that Plaintiff has visited Defendant's store or has actual plans to use Defendant's physical store. The Complaint certainly makes conclusory allegations that Plaintiff has been denied "full and equal access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and in the physical store," but these boilerplate statements are not plausible without factual support. *See* Complaint, ¶¶ 37, 54, 74. At best, the Complaint alleges that Plaintiff is unable to participate in the same shopping experience, with the same access to merchandise, sales, discounts, and promotions, as provided at the Website and in the physical store. *See* Complaint, ¶ 23.

Like the *Gil* plaintiff, Plaintiff focuses on (1) services on the Website that are also available in the store and (2) conveniences of the Website that are unavailable to him, like the ability to pre-shop and educate himself on merchandise and to avoid the inconveniences of traveling outside of his home.[6] *See* Complaint, ¶¶ 18-20. But the ADA and Palm Beach Code do not guarantee the identical shopping experience, *see Gomez*, No. 1:16-CV-23801, 2017 WL 1957182, at *4; they guarantee that the Website not serve as an impediment to the physical shopping experience, and Plaintiff does not allege that he has been prevented from accessing the physical store's services. Similarly, in the Declaration, attached as Exhibit B to the Complaint, Mr. Moody concludes that the Website's "defects act as a barrier to the effective use and enjoyment *of the site* for persons with

---

[6] Plaintiff alleges that traveling outside of his home is a difficult and frightening experience and that he was left feeling excluded because he was unable to participate in the same shopping experience. (Complaint, ¶¶ 18,23). Yet Judge Lenard rejected the same argument from the plaintiff in *Gomez*, 2017 WL 1957182, at *4, noting that his general grievances were unconnected to any harm that he suffered at the actual place of public accommodation and were, therefore, insufficient to survive a motion to dismiss.

low to no vision," but he does not discuss how the Website impedes the full use and enjoyment of the physical store. *See* Complaint, Exhibit B, p. 3 (emphasis added). This misdirected allegation is not sufficient to make a claim under the ADA or Palm Beach Code.

Accordingly, the Website does not constitute an "intangible barrier" to Plaintiff's ability to access and enjoy fully and equally Defendant's physical store and, consequently, Plaintiff's alleged inability to access the Website does not violate Title III of the ADA or the Palm Beach Code. The Complaint is devoid of a single allegation concerning Plaintiff's use of Defendant's physical store or how his experience on the Website impeded his actual experience at Defendant's store. Rather, Plaintiff alleges that he "is and has been a customer who is interested in patronizing, and intends to patronize in the near future," but he has not alleged definitive plans to visit Defendant's only physical store and has not, in fact, visited such store.[7] *See* Complaint, ¶ 17. Plaintiff alleges that he plans to visit Defendant's physical store "once the Website's access barriers are removed or remedied," (s*ee* Complaint, ¶ 24), but he does not allege that the absence of these auxiliary aids prevent him from accessing goods or services of Plaintiff's physical store.

## **CONCLUSION**

When Plaintiff's allegations are analyzed under the plausibility analysis, they fail in several respects: Plaintiff alleges accessibility deficiencies with the Website, but fails to connect those deficiencies to his use and enjoyment of Defendant's physical store; Plaintiff alleges that the Website is a point of sale, but fails to allege that any goods or services offered on the Website are Plaintiff's only access to those goods or services; and Plaintiff alleges that he wants to patronize Defendant's physical store once the accessibility barriers are removed, but fails to allege how he is prevented now from shopping at Defendant's store. These pleading defects, upon review of

---

[7] Even the Declaration of Robert D. Moody submitted in support of the Complaint is limited to Mr. Moody's audit of the Website and does not address how the alleged limitation on the Website affects Plaintiff's ability to use Defendant's physical store. *See* Complaint, Exhibit B. The Moody Declaration is limited to the alleged barriers associated with the use of the Website alone.

*Rendon* and *Gil*, demonstrate that Plaintiff falls short of plausibly pleading a claim under Title III of the ADA and the Palm Beach Code. For the foregoing reasons, the Court should dismiss this action in its entirety, because Plaintiff has failed to state a claim upon which relief may be granted as to Count I and Count II.

Dated: December 6, 2022                                                 Respectfully submitted,

                    MCMICHAEL TAYLOR GRAY, LLC
/s/ Ashley Elmore Drew
Ashley Elmore Drew FL Bar No. 87236
Andrew Kamensky FL Bar No. 0127575
Attorneys for Defendant Koko Atlantic LLC
3275 W. Hillsboro Blvd., Suite 312
Deerfield Beach, FL 33442
Phone: (404) 474-7149
Fax: (404) 745-8121

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on December 6, 2022, the foregoing document was filed with the Clerk of Court using CM/ECF. We also certify that a true and correct copy of the foregoing document is being served on this day upon: Roderick V. Hannah, Esquire, 4800 North Hiatus Road, Sunrise, Florida 33351-7919; kflynn@rhannahlaw.com; rhannah@rhannahlaw.com, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

                    MCMICHAEL TAYLOR GRAY, LLC
/s/ Ashley Elmore Drew
Ashley Elmore Drew FL Bar No. 87236
Andrew Kamensky FL Bar No. 0127575
Attorneys for Defendant Koko Atlantic LLC
3275 W. Hillsboro Blvd., Suite 312
Deerfield Beach, FL 33442
Phone: (404) 474-7149
Fax: (404) 745-8121